Hawkins, J.,
delivered the opinion of the Court.
This suit was commenced on the Law side of the Common Law and Chancery Court of the City of Mem *32 phis, on the 14th day of January, 1861, upon the following instrument, to^-wit:
“$4,716.64. ■ “Holly SpkiNGS, Miss., )
August 18, 1859. $
“On the first day of January, Eighteen Hundred and Sixty-one, (1861,) I promise to pay to the order, J. C. Dougherty, Four thousand seven hundred and sixteen 64-100 dollars, at the Bank of Memphis, at Memphis, Tenn., for value received, with ten per cent, interest, from the first day of March next. Witness my hand and seal.
[Signed:] “A. Street & Co.”
This note was indorsed by Dougherty to A. J. Montgomery; and by Montgomery to N. B. Forrest; and by Forrest to John Overton; and by Overton to W. H. Bolton. And having been protested for non-payment at maturity, Bolton, the holder, brings this suit against the maker and indorsers. The declaration makes pro-ferí of the note and indorsements, and alleges that it was executed and indorsed at Holly Springs, in the State of Mississippi; and was payable at the Bank of Memphis, at Memphis, in the State of Tennessee. The defendants, Forrest and Overton, among other defenses, plead, “that the note sued on was not made or indorsed at Holly Springs, Mississippi; but was made and indorsed at Memphis, Tenn.” To this plea the plaintiff demurred; and assigned as causes of demurrer,
1st, That the plea does not allege that the plaintiff knew of the alleged facts set forth in defendant’s said plea.
2d, Because it does not allege that the note was made in Tennessee, for the purpose of avoiding the *33 usury law of tlie State of Tennessee. Upon the hear» ing of the demurrer, the Court being of opinion that the same reached back to the first error in pleading, and that the note sued on, as: described in the plaintiff's declaration, was “void for illegality on its face,” ordered that the cause be dismissed, and that the defendants recover of the plaintiff the costs of the suit; from which judgment of the Court the plaintiff has appealed to this Court.
The first and only question which necessarily presents itself for our consideration, is this: Is the note void, because of matters apparent upon its face? It is admitted, that, by the laws of the State of Mississippi, the parties might legally contract to pay and receive ten per cent, interest. But it is insisted, that, as by the terms of the contract, it was to be performed, and the money paid, in the State of Tennessee, it must, therefore, be construed according to the laws of this State. And inasmuch as it contains upon its face, a stipulation for the payment of usurious interest, according to the laws of Tennessee, it is illegal; therefore, the suit must be dismissed, and the plaintiff repelled. If the legal propositions insisted upon, be correct, the result contended for must follow; for the Courts of the country will not lend their active aid to the enforcement of an illegal contract. On the other hand, it is insisted, that, although the contract would be illegal if it had been entered into in this State, because of the stipulation to pay ten per cent, interest, that, inasmuch as it was entered into in the State of Mississippi, where the parties might lawfully stipulate for the *34 payment of interest, at the rate of ten per cent., (notwithstanding Memphis, in this State, was designated as the place for the performance of the contract,) it is valid, and should be enforced by our Courts.
2. If the contract so entered into stipulate for interest generally, it shall be the rate of interest of the place of payment, unless it appears the parties intended tó contract with reference to the law of the other place.
3. If the contract be so entered into for money, payable at a place on a day certain, and no interest be stipulated, and payment be delayed, interest, by way of damages, shall be allowed, according to the law of the place of payment. 14 Vermont, 33.
In the case of Chapman vs. Robertson, 6 Paige, 627, Chancellor Walworth said: “If a contract for the loan of money is made here, and upon a mortgage of lands in this State, which would be void if the money was payable to the creditor here, it cannot be a violation of the English usury laws, although the money is made payable to the creditor in that country, and at a rate of interest which is greater than is allowed by the laws of England.” And the Chancellor then adds: “This question was very fully and ably examined by Judge Martin, in the case of Depau vs. Humphreys, in the Supreme Court of Louisiana: (20 Martin, 1;) and that Court came to the conclusion — in which we fully concur — that, in a note given at New Orleans, upon a loan of money made there, the creditor might stipulate for the highest legal rate of conventional interest allowed by the laws of Louisiana; although the rate of *35 interest thus agreed to he paid, was higher than that which could he taken upon a loan by the laws of the State where such law was made payable.” In commenting upon the decision in the case of Depau vs. Humphreys, Mr. Justice Story, in his Commentary on the Conflict of Laws, sec. 298, says: “The Court seem to have founded their judgment upon the ground, that, in the sense of the general rule already stated, there are, or there may he, two places of contract — that in which the contract is actually made, and that in which it is to be paid, or performed.”
Mr. Parsons, in his work on Contracts, vol. 2, p. 95, says, of a note supposed to have been made in one State, and payable in another: “It would seem, from the authorities, that a contract may have two different places, the law of which enters into its constriiction.” “If expressly payable in a place other than that where it is made, it would seem, according to some authorities, that the law of either place niay he applied — thus: If the legal interest in Hew York is seven per cent., and the legal interest in Boston is six per cent., a note on interest, payable at Boston, and made in Hew York, would be held not to be usurious in Boston, if it expressed seven per cent, as its rate of interest.” Then, after stating that some authorities hold otherwise, the author proceeds to say: “Our own opinion is decidedly in favor of the former view; that is, if a note be made bona fide in one place, expressly bearing an interest legal there, and payable in another place, in which so high a rate of interest is not allowed, it may be sued in the place where payable, and the interest *36 expressed, recovered; because the parties had their election, to make the interest payable according to the law of either place; or, to express the same thing differently, they may lawfully agree upon the largest interest allowed by the law of either place, or any less interest; and if no interest be expressed, then the interest will be measured by the law of the place where the note is payable.”
The question is one upon which eminent jurists have differed in opinion, and consequently, there is much seeming conflict of authority. One of the earliest cases in this country, involving this question, came before the Supreme Court of Louisiana. In that case, the note was made in New Orleans, payable in New York, for a large sum of money, bearing interest at the rate of ten per cent., being the legal rate of interest of Louisiana, whilst the legal rate of New York, was seven per cent, only. The question was, whether the note was tainted with usury, and therefore void, as it would be, if made in New York. The Supreme Court of Louisiana, after a full review of the authorities upon the question, decided, that it was not usurious; and that, although the note was made payable in New York, yet the interest might be stipulated for, either according to the laws of Louisiana, or according to those of New York; Depau vs. Humphreys, 20 Martin, 1.
The case of Pecks vs. Mayo, was an action on two promissory notes, made at Montreal, where the makers resided, payable in Albany, New York. The lawful rate of interest in Montreal was six per cent., while in New York it was seven per cent, per annum. Redfield, *37 Judge, in delivering the opinion of the Court, after an examination of all the authorities, says: “From all which, I consider the following rules, in regard to interest, on contracts made in one country, to he executed in another, to he well settled: 1st, If a contract be entered into in one place, to he performed in another, and the rate of interest differ in the two countries, the parties may stipulate for the rate of interest of either country, and thus hy their own express contract, determine, with reference to the law of which country, that incident of the contract shall he decided.
■ The more recent case of Miller vs. Tiffany, decided hy the Supreme Court of the United States, in 1863, 1 Wallace’s Rep., 298, was a hill to foreclose a mortgage. The mortgage note was made in Indiana, and payable in Ohio, hearing ten per cent, interest, the legal rate of Ohio. The precise question involved in this case, therefore, did not arise in that case; hut the principles announced by the Court, are applicable to this case. Judge Swayne, in delivering the. opinion of the Court, said: “The general principle in relation to contracts made in one place, to he performed in another, is well settled. They are to he governed hy the law of the place of performance; and if the interest allowed hy the law of' the place of performance, is higher than that permitted at the place of contract, the parties .may stipulate for the higher interest, without incurring the penalties of usury. The converse of this proposition is well settled. If the rate of interest be higher at the place of contract than the place of performance, the parties may lawfully *38 ' contract in that case also, for the higher rate:” citing the cases of Depau vs. Humphreys, and Chapman vs. Robinson, before referred to. But the Court goes on further to say: “These rules are subject to the qualification, that the parties act in good faith, and that the form of the transaction is not adopted to disguise its real character. The validity of the contract is determined by the law of the place where it is entered into — whether void or valid there, it is so every where:” citing Andrews vs. Pond, 13 Peters; Mix et al. vs. The Madison Insurance Co., 11 Indiana, 117; and Corcoran & Riggs vs. Powers et al., 6th Ohio State, 19.
After stating the general rule, as applicable to contracts made in one country, to be performed in another, containing no stipulation as to the rate of interest, Chancellor Kent, vol. 2, page 60, says: “If, however, the rate of interest be specified in the contract, and it be according to the law of the place where the contract was made, though that rate be higher than is lawful by the law of the place where payment was to be made, the specified rate of interest at the place of the contract, has been allowed by the courts of justice in that place, for that is a part of the substance of the contract.”
The law of the case of Depau vs. Humphreys, 20 Martin, before referred to, has been critically . examined by Mr. Justice Story, with his usual immensity of erudition; and after an elaborate examination of authorities, he comes to the conclusion, that the decision of the Court of Louisiana is not supported by *39 the reasoning or principles of foreign jurists, and is directly opposed to the English case of Robinson vs. Bland, 2 Burrow, 1077; and the American case of Andrews vs. Pond, 13 Peters, 65; and they are relied upon by the defendants in this .case. We think an examination of these cases will lead to a different conclusion. The former was a case reversed at nisi prius, at Westminster Hall, before Lord Mansfield, in 1790. The declaration contained three counts. The first was upon a hill of exchange, drawn at Paris, by Sir John Bland, on himself, in England, for £672 sterling, payable to the order of the plaintiffs. The second was, for £700, moneys lent and advanced by the plaintiff, to Sir John Bland; and the third count was for £700, moneys had and received. The facts of the case were these: The bill of exchange was given at Paris for £300, lent by the plaintiff to Sir John Bland, at the time and place of play; and for £372 more, lost at the same time and place, by Sir John Bland to the plaintiff, at play. In Erance, money lost at play, was not recoverable, in .the ordinary course of justice; but money lent to play with, at' the time and place of play, might be recovered as a debt.
Two questions were raised: 1st, Was the plaintiff entitled to recover upon this bill .of exchange, by force of the writing? Upon this point, after saying that “the facts stated scarce leave room for any question, because the law of Erance and England is the same,” Lord Mansfield held, there were three reasons why the plaintiff could not recover upon the bill of exchange: “1st, The parties had a view . to the laws of England. *40 The law of the place can never be the rale, when the transaction is entered into with an express view to the law of another country, as the rule by which it is to be governed. The payment was to be made in England. The bill of exchange was an English security, and was so intended by the parties;” and, “3d, Because the law of both countries was the same. The consideration of the bill of exchange might, in an action upon it, be gone into in France, as well as in England, and money won’ at play, could not be recovered in any court of justice in France.”
Justice Willmot, in commenting upon the questions of law arising upon the facts in the case, said: “ The present case, notwithstanding the questions that have been agitated in arguing it, comes out to be no case at all, no point at all, no law at all. Indeed, whether an action can be supported in England on a contract which is void by the laws of England, but valid by the law of the country where the matter was transacted, is a great question, (though I should have as great doubt about that,) but that case does not exist here.” Now, we think it will be seen that the question, in the case of Depau vs. Humphreys, and in the cas.e now before the Court, did not aiise in the case of Robinson vs. Bland; neither did Lord , Mansfield express any opinion upon the question. All that he did decide, was, that “ the law of the place can never be the rule, when the transaction is entered into with an express view to the law of another country as the rule by which it is to be governed.” We understand the general rule, as recog- *41 nizecl by all tbe authorities, the case of Depau vs. Humphreys, included.
The parties had entered into . the transactions with a view to the laws of England, as the rule by which it was to be governed, instead -of the laws of France; and inasmuch as the parties so intended, it was to be governed by the laws of England.
In Andrews vs. Pond, 13 Peters, 66, (the American case referred to by Mr. Justice Story,) the suit was instituted upon a bill of exchange, dated at New York, and payable at Mobile, in Alabama, for $7,-287.78. It was insisted, by the defendants, that part of the consideration, for which the bill was drawn, was usurious, and the question was discussed, whether the validity of the contract depended upon the laws of New York, or those of Alabama ; and upon this point, the Court said: “ The general principle in relation to contracts, made in one place, to be executed in another, is well settled; they are to be governed by the law of the place of performance ; and if the interest, allowed by the place'of performance, is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury.” Surely there is nothing in this in conflict with the opinion in Depau vs. Humphreys.
The general rule that interest is to be paid upon contracts according to the law of the place where they are to be paid, must be understood as applicable alone to contracts in which the parties have failed to make any stipulation as to the rate of interest. In *42 such cases, it is presumed the parties contracted with a view to the rate of interest allowed by the law of the place of payment. It is upon this presumption the general rule is based; but where the parties, by the very terms of the contract, stipulate for a higher or lower rate of interest than is allowed by the law of the place where the payment is to be made, the presumption that the contract was made with a view to the law of that place, cannot arise, and therefore does not apply. Six per cent, is the lawful rate of interest in Tennessee. ■ Suppose the parties to this suit had stipulated for the payment of five per cent, instead of ten, then could it have been said that the parties had contracted with a view to the laws of Tennessee, by which the rate of interest is estimated at six per cent., and notwithstanding the stipulations, in the contract, for the reservation of but five per cent., the plaintiffs would have been entitled to recover six per cent.? Certainly not; because the stipulations for the payment ,of interest, at the rate of five per cent., is, of itself, a substantive part of the contract, and rebuts the presumption which would arise in the absence of any contract upon the subject; and the party would recover, upon the contract, and acording to its terms, instead of six per cent, allowed by law. Then, the parties may stipulate, in the contract, for a different rate of interest from the rate allowed by the law of the place of payment; and when they do so stipulate, no presumption can arise, that they entered into the transaction, with a view to the law of the place of payment. The prin *43 ciple is the same, whether the stipulated rate he higher or lower than the rate allowed by the law of the place of performance, so it does not exceed the rate allowed by the law of the place where the contract is made.
The case of Thompson vs. Collins et al., 2 Head, 441, is cited and relied on by the defendants’ counsel. Upon an examination of that case, it will be found the question now under discussion did not arise in that case. The suit was instituted in this State upon a note, which, upon its face, purported to have been made at Saint Louis, due six months after date, and on its face contained the stipulation: “If not paid at maturity, with interest at ten per cent, per annum.” Ho place was fixed by the contract as the place of payment. The suit was between the original parties to the contract. The declaration averred the note was made in Missouri. The defendant, among other defenses, plead the note . sued on was not made in Saint Louis, but was made in Paris, Tennessee. Upon the motion of the plaintiff’s 'counsel, the Circuit Judge struck out the plea; and, upon an appeal to this Court, the only question was, did the Circuit Court err in striking out the plea? This Court held the striking out of defendants’ plea was error, and the judgment was reversed. But, upon a careful analysis of that opinion, it will be found ,the Court expressed no opinion upon the proposition now under consideration.
The case of Murphy vs. The State, is also relied on in support of the action of the Court below, in holding the contract sued on in this case is illegal *44 upon its face, and- therefore void. That was a prosecution for a violation of the usury laws of the State. The parties being citizens of this State, in order to evade the laws of this State, resorted to the subterfuge of going to the State of Kentucky, and there going through with the formality of the delivery of the money by the lender to the borrower, and of reducing the contract to writing. The parties returned to Tennessee, where the usurious interest was received in pursuance of the contract. The Court held that under such circumstances, the contract must be regarded as having been made in Tennessee, and being for a higher rate of interest than six .per cent., was usurious; but the question raised in this case as to the validity of a contract made in one place to be performed in another, containing a stipulation for the payment of a rate of interest allowed by the law of the place of the contract, and higher than is allowed by the place of performance, was not raised, and the Court expressed no opinion upon it. But the Court held that under the circumstances of that case, the contract must be regarded as having been made in Tennessee, and not in Kentucky.
After a careful examination of all, the authorities to which we have had a contract expressly provides for its performance in a place other than that where it is made, the parties may, in good faith, stipulate for the payment of interest according to the law of either place; and in such case, the contract will not be tainted with usury. But, if the making of the contract in one *45 place where a higher rate of interest is allowed, to be performed in another, where the rate of interest allowed is lower, was a mere ■ device to evade the usury laws of the place of performance, and such contract contain a stipulation for the payment of a higher rate, it will be usurious.
These reasons appear to us not only in accordance with reason and sound policy, but to be well sustained by both principle and authority.
It follows, then, that, as there is no illegality apparent upon the face of the contract, the judgment of the Court below in dismissing the suit, is erroneous.
The question as to the sufficiency of the plea and its effect, if true, has been discussed in argument; but, as the Court has pronounced no judgment upon the plea, we do not feel called upon to determine these questions, or to express -any opinion upon the subject.
The judgment will be reversed, and the cause remanded.